**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **MELISSA LEWIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:25-cv-00535-MDH** |
| | ) | |
| **FRANK BISIGNANO,** Commissioner of | ) | |
| the Social Security Administration**,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

Before the Court is Plaintiff Melissa Lewis's appeal of Defendant Social Security Administration Commissioner's ("Commissioner") denial of her application for a period of disability and disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. Plaintiff has exhausted her administrative remedies, and the matter is now ripe for judicial review. After carefully reviewing the record, the Court finds that the administrative law judge's ("ALJ") decision is **AFFIRMED** in part and **REVERSES AND REMANDS** in part.

## BACKGROUND

Plaintiff filed her application for disability insurance benefits under Title II and for supplemental security income payments under Title XVI on July 15, 2022. (Tr. 21). Plaintiff was born on August 12, 1973, and amended her alleged onset date of disability as of August 11, 2023. (Tr. 21 and 32). The ALJ found that Plaintiff had the following severe impairments: spine disorders, headaches/migraines, psoriatic arthritis, right rotator cuff tear, status/post left ankle fracture, fibromyalgia, obesity, major depressive disorder, and generalized anxiety disorder. (Tr.

23-24). The ALJ additionally found that Plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 24). The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds. She can stand and/or walk in combination for up to 4 hours and sit for up to 6 hours in an 8-hour workday. She can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. She can occasionally stoop, but never kneel, crouch, or crawl. She can frequently handle and finger, bilaterally. She must avoid overhead reaching with the right upper extremity, but can frequently reach in all other directions with the right upper extremity. She must avoid extreme heat; wet weather conditions; excessive vibrations; and unprotected heights. She can be exposed to no more than moderate noise, as that term is defined in the DOT/SCO and its companion publications. The claimant is able to concentrate, persist and remain on task and pace to perform simple, routine and repetitive tasks, which may involve multiple non-complex simple, routine and repetitive steps, tasks or instructions. She can concentrate, persist, and remain on task and pace to adapt to work in an environment that involves only simple, work-related decisions with no more than occasional workplace changes. She should have no public interaction. She can work around co-workers throughout the day but with only occasional interaction with co-workers and supervisors.

(Tr. 25). The ALJ found that the Plaintiff is unable to perform any past relevant work as a hotel clerk, short order cook, cleaner housekeeping or personnel clerk. (Tr. 32). Relying on the Vocational Expert's ("VE") testimony, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that the Plaintiff could have performed, considering Plaintiff's age, education, work experience, and RFC. (Tr. 33). Consequently, the ALJ found Plaintiff not disabled. (Tr. 34).

**STANDARD**

The Court's role in reviewing an ALJ's decision is to determine whether the "findings are supported by substantial evidence in the record as a whole." *Page v. Astrue*, 484 F.3d 1040, 1042-43 (8th Cir. 2007), *citing Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir.1999). "Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the

Commissioner's conclusion." *Id.* "The fact that some evidence may support a conclusion opposite from that reached by the Commissioner does not alone permit our reversal of the Commissioner's decision." *Id., citing Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir.2004); *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007). If the record contains substantial evidence to support the Commissioner's decision, the Court may not reverse the decision simply because substantial evidence exists in the record that would have supported a contrary outcome. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). In other words, the Court cannot reverse simply because it would have decided the case differently. *Id., citing Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). Further, the Court defers to the ALJ's determinations of the credibility of witness testimony, as long as the ALJ's determinations are supported by good reasons and substantial evidence. *Pelkey v. Barnhart,* 433 F.3d 575, 578 (8th Cir. 2006).

## DISCUSSION

The Plaintiff argues three points on appeal. Plaintiff argues that the ALJ did not properly address the opinion evidence of record; the ALJ did not adequately address the Plaintiff's subjective symptoms; and The ALJ did not comply with SSR 00-4p and did not sustain Defendant's burden at step five of the sequential evaluation process. The Court will take each argument in turn.

## I.      Opinion Evidence of Record

The Plaintiff argues two reasons to support her position that the ALJ did not properly address the opinion evidence of record. First, the Plaintiff argues that the ALJ did not articulate the supportability of the opinion of Jake Nelson, PhD who conducted an interview, mental health assessment, and mental status examination of the Plaintiff. Second, the Plaintiff argues that the ALJ failed to articulate the supportability of the state agency psychologists' prior administrative

medical findings which showed that Plaintiff was markedly limited in her ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. The Plaintiff argues that the prior medical findings also found that she was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors.

### A.        Supportability of the Opinion of Jakob Nelson, PHD

The Plaintiff states that the ALJ found Dr. Nelson's opinion inconsistent with the record. However, the Plaintiff argues that the ALJ did not articulate the supportability of the opinion. Specifically, that the ALJ failed to address or recognize Plaintiff's personality disorder as an impairment. In support, Plaintiff argues that the ALJ discounted the consistency of Dr. Nelson's opinion in part by finding that the Plaintiff socialized with friends. However, the Plaintiff argues that the record shows her inability to maintain relationships with friends, her sister, frequent conflicts with her husband, health care providers, neighbor and has been kicked out of a grocery store multiple times due to her borderline personality disorder. Plaintiff argues that the ALJ erred in failing to articulate the supportability of Dr. Nelson's opinion and in formulating Plaintiff's RFC as the Plaintiff cannot sustain occasional social interaction with co-workers and supervisors.

The Defendant argues that the ALJ properly considered Dr. Nelson's opinion in assessing Plaintiff's RFC. The Defendant states that the ALJ considered Dr. Nelson's opinion and found it "largely persuasive to the extent he opines the claimant had mild to moderate mental limitations". (Tr. 32). The Defendant argues that the ALJ addressed the supportability of Dr. Nelson's opinion noting that this finding was "supported by the examiner's own largely normal mental exam (i.e., normal orientation, grooming, attitude, memory, concentration, logical reasoning, calculation, and fund of knowledge/intellect)." *Id*. The Defendant argues that the ALJ addressed consistency by finding Plaintiff had mild to moderate mental limitations was "consistent with the record, showing

4

largely normal mental exam findings including the normal findings of the neuropsychological examiner." *Id*. The Defendant further argues that the ALJ addressed the unpersuasive portion of the opinion finding that Plaintiff being unable to interact with others routinely or appropriately was not a limitation consistent with the record as the evidence showed that Plaintiff socialized with friends, and objective examination findings throughout the record were routinely unremarkable.

The ALJ's decision states in relevant part:

> The opinion of consultative psychological examiner Jakob Nelson, PhD, at Exhibit 19F, is largely persuasive to the extent he opines the claimant has mild to moderate mental limitations. This finding is supported by the examiner's own largely normal mental exam (i.e., normal orientation, grooming, attitude, memory, concentration, logical reasoning, calculation, and fund of knowledge/intellect). A finding that the claimant has mild to moderate mental limitations is also consistent with the record, showing largely normal mental exam findings including the normal findings of the neuropsychological examiner. *However, to the extent Dr. Nelson opines the claimant is unable "to interact with others routinely or appropriately," this opinion is inconsistent with the record. As noted, the claimant socializes with friends. Objective exam findings throughout the record are routinely unremarkable and reflect some mood issues (i.e., low mood, sadness, irritability etc.), but overall normal appearance/hygiene, behavior, through (circumstantial at times), overall cognition, memory, attention/concentration, insight, and judgment.* E.G., Exhibit 7F/3, 8, 15, 28-29; 14F/14, 24. Psychiatric assessments are routinely normal and reflect normal mood/affect, memory, and overall cogniti0n. E.G., Exhibit 20F/2-3; 21F/5, 9, 25.

(Tr. 32) (Emphasis added).

Here, the ALJ did not err regarding the supportability of the opinion of Dr. Jakob Nelson, PhD. The record shows that the ALJ explicitly reviewed the opinion of Dr. Nelson and stated, "to the extent Dr. Nelson opines the claimant is unable 'to interact with others routinely or appropriately,' this opinion is inconsistent with the record." *Id*. Specifically, the ALJ noted that the claimant socializes with friends and that the objective exam findings throughout the record are unremarkable with regard to further mental limitations regarding Plaintiff's ability to interact with others routinely or appropriately. *Id*. This is sufficient to support the ALJ's decision regarding the

5

supportability of Dr. Nelson's opinion and rationale for finding that specific portion of the opinion inconsistent with the record. For the reasons stated, there is substantial evidence in the record to support the ALJ's supportability of Dr. Nelson's opinion.

**B.     Supportability of the Prior Administrative Medical Findings**

The Plaintiff argues that the ALJ erred in assessing the supportability of the prior administrative medical findings of the state agency psychologists and did not reconcile these opinions with the RFC. The Plaintiff asserts that the ALJ's assessment is inadequate because it lacks an articulation of the supportability of Plaintiff's social limitations and considers only the consistency factor. Plaintiff further argues that the activities listed by the ALJ are not probative of whether the Plaintiff could get along with co-workers and supervisors without distracting them, exhibiting behavioral extremes or if the Plaintiff could respond appropriately to criticism from supervisors. Lastly, the Plaintiff argues that the ALJ discounted the Plaintiff's symptoms because "mental health treatment is fairly minimal and occurs mainly in the form of therapy." (Tr. 29). However, the Plaintiff asserts that the mental health treatment, while mainly in the form of therapy, was not minimal and reflected in the record.

The Defendant argues that the ALJ's consideration of the prior administrative medical findings was proper. The Defendant asserts that state agency medical consultants do not perform examinations, thus an evaluation of whether they are supported by and consistent with the record as a whole necessarily focuses on the medial findings throughout the record. The Defendant further argues that he ALJ properly determined that Plaintiff had moderate limitations in interacting with others as the ALJ pointed to unremarkable objective examination findings throughout the record that included normal behavior and normal mood/affect. Further, the Defendant states that the consultative    psychological    evaluation    indicated    normal    grooming    and    attitude,    the

6

neuropsychological examination indicated some crying and emotional display, but normal eye contact, orientation, and speech. The Defendant also states that the ALJ further discussed evidence specifically with regard to social and adaptation issues, noting that Plaintiff was able to go out with friends on a Friday night, attend meetings, watch dogs for people, and that she had a group of friends that she spent time with. Lastly, the Defendant argues that although the Plaintiff alleges the record supports limitations beyond those the ALJ included in the RFC finding, this alternative view of the evidence does not overcome the substantial evidence supporting the ALJ's decision and impermissibly suggests the Court should reweigh the evidence.

The ALJ's decision states in relevant part:

*The prior administrative findings of the state agency medical consultants are persuasive, as they are supported by the evidence and they are consistent with the record. (Exhibit 3A; 4A; 7A; 8A.) The record supports the claimant can perform a range of light work for the reasons noted previously, including the stable and controlled nature of the severe conditions, improvement with medication and therapy, the largely unremarkable to mild objective exam findings of record, and the claimant's wide range of daily activities including care for dogs, socialization with friends, and gardening.* However, I have added some non-exertional limitations, as well as reduced stand/walk, to account for the claimant's hearing testimony about her symptoms. I note that at the hearing, the claimant's representative alleged that the claimant would be disabled under the Medical-Vocational Grid Rules based on the prior sedentary administrative findings from DDS. While DDS, at the initial level, identified sedentary jobs based on the exertional limits of occasionally lifting and carrying 20 pounds, frequently lifting and carrying 10 pounds, standing and/or walking up to 4 hours and sitting for up to 6 hours in an 8-hour workday (Exhibit 3A; 4A; 7A; 8A), the vocational expert testified that sedentary would not be the maximum physical ability based on the same exertional limits; instead, the vocational expert identified light jobs in response to the aforementioned exertional limitations.

(Tr. 31) (Emphasis added).

Here, the ALJ did not err regarding the supportability of the prior administrative medical findings. The ALJ explicitly stated that the prior administrative findings of the state agency medical consultants are persuasive, as they are supported by the evidence and they are consistent

with the record. *Id*. The ALJ noted that the record supports a range of light work for the reasons noted previously, including the stable and controlled nature of the severe conditions, improvement with medication and therapy, the largely unremarkable to mild objective exam findings of record, and the claimant's wide range of daily activities. *Id*. The ALJ properly supported her conclusion by the relation it has to other evidence within the record and Plaintiff's hearing testimony. In review of the ALJ decision and the record there is substantial evidence to support the ALJ's decision regarding the supportability of the prior administrative medical findings.

## II.     Plaintiff's Subjective Symptoms

The Plaintiff argues that the ALJ failed to adequately address symptoms related to Plaintiff's microscopic colitis, incontinence, and diarrhea. The Plaintiff asserts that the ALJ did not specifically acknowledge microscopic colitis as a medically determinable impairment nor did the ALJ include in the RFC any limitations related to Plaintiff's need for frequent bathroom breaks and access. The Plaintiff concedes that the ALJ instead stated that Plaintiff "intermittently" reported diarrhea symptoms, with unremarkable work-up and helpful treatment but that these conclusions are unsupported by the record. The Plaintiff argues that her subjective symptoms aligned with the nature of her impairment and warranted some degree of RFC limitation, as to fast access to a restroom.

The Defendant argues that the ALJ properly considered Plaintiff's subjective complaints. In support, the Defendant states that the ALJ specifically considered that Plaintiff asserted a number of ongoing subjective symptoms that were not fully supported by objective data. The Defendant also states that the ALJ also considered Plaintiff's testimony and allegations of daily incontinence, including her reports that she experienced diarrhea up to ten times per day. However, while the Plaintiff intermittently reported such symptoms, workups were unremarkable and

treatment was helpful. The Defendant also states that a colonoscopy showed colitis, for which the Plaintiff was prescribed medication and with medication the Plaintiff reportedly had only two-four formed bowel movements daily. Additionally, the Defendant states that an anal rectal manometry study completed on April 25, 2023, indicated normal expulsion, anal hypotension, normal contractility, and rectal hyposensitivity.

The ALJ's decision states:

> At her hearing the claimant alleged daily incontinence, and she told a consultative examiner she has diarrhea up to 10 times per day. While the claimant does intermittently report such symptoms to her providers, work-up is unremarkable and treatment is helpful. See Exhibit 16F/4. A colonoscopy shows colitis, for which the claimant is prescribed medication. With medication, the claimant has 2-4 formed bowel movements daily. (Exhibit 9F/3, 14; 16F/4). An anal rectal manometry study completed April 25, 2023, notes normal expulsion, anal hypotension, normal contractility, rectal hyposensitivity. Pelvic floor rehabilitation was recommended (Exhibit 18F/44), but participation is limited and minimal, as the claimant appears to have attended just one session. See Exhibit 18F/52.

(Tr. 29).

The ALJ did not err in addressing symptoms related to Plaintiff's microscopic colitis, incontinence, and diarrhea. The ALJ explicitly noted Plaintiff's subjective symptoms related to her microscopic colitis, incontinence, and diarrhea. The ALJ found that while Plaintiff reported such symptoms, her work-up was unremarkable and treatment was helpful. The ALJ premised her decision on the effects medications had on Plaintiff's symptoms, normal lab work, and rehabilitation that was recommended. There is substantial evidence in the record that would support the ALJ's decision with regard to Plaintiff's subjective symptoms.

## III.    SSR 00-4p and Step Five Findings

The Plaintiff next argus that the ALJ did not comply with SSR 00-4p and did not sustain Defendant's burden at step five of the sequential evaluation process. The ALJ found that the Plaintiff could adjust to other work as a Marker (DICOT 209.587-034); Collator Operator (DICOT

9

208.685-010); and Photocopy Machine Operator (DICOT 207.685-014). Plaintiff argues that the ALJ failed to resolve conflicts related to Plaintiff's RFC limitation as to no overhead reaching with her right upper extremity, which directly conflicts with the occupations identified by the VE. Plaintiff further argues that the ALJ and VE failed to address conflicts with the Dictionary of Occupational Titles ("DOT") as to Plaintiff's limitations in performing detailed work. Specifically, the listed jobs identified by the VE as reasoning level two occupations, where Plaintiff's RFC would limit her to level one occupations.

At step five, the Commissioner has the burden to "identify the types of jobs [a claimant] could perform notwithstanding his disabilities" and to "ascertain whether those kinds of jobs 'existed in significant numbers in the national economy.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (quoting 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1)). *See also Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). "The Commissioner may rely on a vocational expert's response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). The ALJ, however, cannot rely on testimony that conflicts or appears to conflict with information in the DOT without addressing and resolving the conflict. SSR 00-4p, 2000 WL 1898704, at *2-*4; *Stanton v. Comm'r, Soc. Sec. Admin.*, 899 F.3d 555, 558 (8th Cir. 2018). If the ALJ does not identify and resolve the apparent conflict, "the vocational expert's testimony is not substantial evidence to support the denial of benefits." *Stanton*, 899 F.3d at 558.

The Commissioner adopted this rule in SSR 00-4p, stating "[w]hen a [vocational expert] ... provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] ... evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4. If there is

an apparent conflict between the vocational expert's testimony and the DOT, the ALJ "will obtain a reasonable explanation for the apparent conflict." *Id.* The ALJ must resolve the conflict before relying on the expert's testimony in support of its determination, and must explain in the decision how the ALJ resolved the conflict. *Id.* Thus, "[w]hether the vocational expert's testimony is substantial evidence in support of the ALJ's decision depends on whether the expert's testimony appears to conflict with the DOT, and if so, whether the ALJ resolved the conflict." *Stanton*, 899 F.3d at 558.

### A. Conflicts Related to Overhead Reaching

The Plaintiff argues that the ALJ erred in failing to recognize and resolve the conflict between the DOT and the reaching limitations in Plaintiff's RFC. The Plaintiff states that as a result of a shoulder impairment, the ALJ limited Plaintiff to no overhead reaching with her right upper extremity. Plaintiff asserts that reaching is defined as extending the hands and arms in any direction, which would include an overhead direction. Plaintiff argues that the occupations identified by the VE require frequent reaching and exceed Plaintiff's RFC. Thus, there is an apparent conflict between the VE's testimony and the DOT.

The Defendant argues that the VE specifically addressed the overhead lifting limitation and testified that overhead reaching was not specifically addressed in the DOT but explained that she based her testimony on her professional education and experience. The Defendant also states that the ALJ addressed the limitation regarding overhead reaching and referenced the VE's testimony in her decision. The Defendant argues that the ALJ reasonably determined that the VE's testimony was consistent with the DOT and supplemented with her experience pursuant to SSR 00-4p.

11

The record indicates the section Plaintiff wishes to highlight, giving rise to this point on appeal which states:

> ALJ: Okay. All right. And, Ms. Ruhnke, has your testimony been consistent with the Dictionary of Occupational Titles and its companion publication?
>
> VE:  Yes.
>
> ALJ:  Any supplementations?
>
> VE:  Yes. Regarding a reduced amount of standing and walking for light level jobs, overhead reaching is not specifically addressed, social -- specifics of social interactions, absences and breaks, I gave response to those based on my professional education and experience.

(Tr. 78).

The ALJ did not err in failing to recognize and resolve a conflict between the DOT and the reaching limitations in Plaintiff's RFC. The VE is correct that overhead reaching is not addressed in the work descriptions reflected in Marker, Collator Operator or Photocopy Machine Operator.[1] All three jobs the VE highlighted are SVP 2 level rated occupations with a strength level of "light work" and a General Educational Development ("GED") level of 2. Light work is defined as:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: actively or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls: and/or (3) when the job requires working at a production rate pace entailing the constant

---

[1] When looking at the DOT, none of the listed occupations have any requirements regarding overhead reaching. The Court reviewed the closest occupation related to Marker in the Occupational Information Network ("ONET") which was Marking Clerks. The Marking Clerk occupation had a work activity element for performing general physical activities which states "[p]erforming physical activities that require moving one's whole body, such as in climbing, lifting, balancing, walking, stooping, where the activities often also require considerable use of the arms and legs, such as in the physical handling of materials. Occupational Information Network, https://occupationalinfo.org/onet/58021.html. The Photocopying-Machine Operator (clerical) has a closely related occupation in duplicating machine operators in ONET which has the same requirements as the Marking Clerk with regard to performing general physical activities as part of the job. Occupational Information Network, https://occupationalinfo.org/onet/56005.html. The Collateral Operator (clerical) occupation did not have an analogous ONET entry.

pushing and/or  pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in a industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

*See* DOT Appendix C. Nowhere within the definition of "light work" is there any indication of overhead reaching. The ALJ stated within her decision:

> The [VE] stated her testimony is consistent with the [DOT] and the Selected Characteristics of Occupations (SCO), except she used her education, training, and experience as a [VE] when testifying to matters not covered by the DOT or SCO including reduced standing/waling to 4 hours for light work, overhead reaching, social interactions, absences, and breaks. (Hearing Testimony.) Pursuant to SSR 00-4p, I have determined that the [VE]'s testimony is consistent with the information contained in the [DOT] and supplemental with her experience.

(Tr. 33). After review of the record, the Court finds that there is no conflict as it relates to the Plaintiff's RFC and the occupations identified by the VE utilizing the DOT. Thus, there is substantial evidence in the record to support the ALJ's findings.

### B.      Conflicts Related to the Reasoning Level Required of the Occupations

The Plaintiff argues that the ALJ erred in failing to recognize and resolve the conflict between the DOT and the limitation in Plaintiff performing detailed work in the RFC. The Plaintiff states that the ALJ found that Plaintiff was able to "concentrate, persist and remain on task and pace to perform simple, routine and repetitive tasks, which may involve multiple non-complex simple, routine and repetitive steps, tasks or instructions." (Tr. 25) The ALJ also found that Plaintiff "can concentrate, persist, and remain on task and pace to adapt to work in an environment that involves only simple, work-related decisions with no more than occasional workplace changes." *Id*. The Plaintiff argues that the ALJ and VE did not recognize that the jobs identified by the VE were reasoning level two occupations and thus failed to address conflicts with the DOT as to Plaintiff's limitations in performing detailed work.

The Defendant argues that the jobs identified by the VE are described as light with Specific Vocational Preparation ("SVP") ratings of "2". The Defendant asserts that under agency policy an SVP 2 job is unskilled. The Defendant argues that there is no conflict between an RFC for simple, routine, and repetitive work and an SVP 2 type job. As such, the Defendant argues that substantial evidence supports the ALJ's findings.

Plaintiff's mental RFC provides the following limitations:

> The claimant is able to concentrate, persist and remain on task and pace *to perform simple, routine and repetitive tasks, which may involve multiple non-complex simple, routine and repetitive steps, tasks or instructions.* She can concentrate, persist, and remain on task and pace to adapt *to work in an environment that involves only simple, work-related decisions with no more than occasional workplace changes.* She should have no public interaction. She can work around co-workers throughout the day but with only occasional interaction with co-workers and supervisors.

(Tr. 25) (Emphasis added). The occupations the VE has identified all have a GED level of 2 which states that a person holding that occupation can "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DOT Appendix C.

The ALJ erred as to failing to recognize the conflict related to Plaintiff's mental RFC and the reasoning level required of the occupations. The ALJ's determination of Plaintiff's RFC reads closer to a GED level of 1 rather than 2. A GED level of 1 requires the person to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* Plaintiff's RFC requires that she can "perform simple, routine and repetitive tasks, which may involve multiple non-complex simple, routine and repetitive steps, tasks or instructions." (Tr. 25). Simple and routine are closer to the GED level of 1 rather than 2 as GED 2 requires Plaintiff to carry out detailed but uninvolved written or oral instructions. Based on the

14

record, the Court finds that the ALJ failed to recognize the conflict related to Plaintiff's RFC and the reasoning level required of the occupations. For that reason, the Court will order remand on the issue of whether Plaintiff's RFC would allow for her to perform the jobs identified requiring a GED level 2.

## CONCLUSION

With respect to the supportability of the opinion of Dr. Nelson and the prior administrative medical findings, the Court finds there was no error. Further, regarding Plaintiff's subjective symptoms, the Court finds that there is substantial evidence in the record to support the ALJ's decision. Regarding the conflicts related to overhead reaching, the Court finds there is no conflict and that the ALJ's decision is supported by the record. As such, the Court **AFFIRMS** the decision with respect to those findings.

As to the conflicts related to the reasoning level required of the occupations, the Court finds that the ALJ erred in failing to recognize that conflict between Plaintiff's RFC and the reasoning level required for the occupations stated in the decision. Therefore, the ALJ's decision as to this point on appeal is **REVERSED AND REMANDED**.

**IT IS SO ORDERED.**

DATED: May 26, 2026

 */s/ Douglas Harpool* _____
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**

15